UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                         :

YOUNG RAH,                                        :

                              Plaintiff,   :

                                                 :        12 Civ. 7969 (JPO)
                      -v-                           :

                                                 :        OPINION AND ORDER
SANG CHUL LEE, et al.,                       :

                              Defendants.  :
                                                 :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      This action arises from the role of the pro se plaintiff, a New York lawyer, in a botched New Jersey real estate transaction. Plaintiff is being sued for malpractice in New Jersey state court. He filed this action seeking removal of or an injunction against the state court action, declaratory relief, and damages for the costs and fees he has incurred in defending against the malpractice suit. Because Defendants, Plaintiff's former clients, have not appeared in this action, Plaintiff moves for relief by default judgment. For the reasons that follow, that motion is denied and this case is dismissed.

**I.    Background**[1]

      Plaintiff seeks relief from a state court malpractice suit based on a prior federal court's order denying injunctive relief in a 2003 RICO suit that arose from the same underlying facts.

      **A.    The Underlying Transaction**

      Disputes between two factions lie at the heart of this matter. In the five years leading up to 2003, Sang Chul Lee and Jun Gil Lee allegedly provided over $11 million in investments and loans for business ventures operated by Daniel Choi, his father Sung Su Choi, and his mother Ok

---

[1] Unless otherwise stated, all facts have been taken from the Motion for Default Judgment and attachments to it (Dkt. No. 10).

Choi. In January 2003, after those loans and investments failed, the Chois tendered a deed to their residence in Closter, New Jersey (the "Closter House") to the Lees as partial repayment. The Lees hired Young Rah, a New York lawyer and Plaintiff in this action, to facilitate that transaction. Rah prepared a deed for the Closter House using a standard New York form (the "NY Deed"). Rah held the deed in escrow pending the sale of the Closter House. Rah subsequently prepared an Undertaking Agreement in which the Chois agreed to list the Closter House for sale and deliver the proceeds to Rah as the agent of Sang Chul Lee. It is unclear whether the Chois knowingly and voluntarily entered into this Agreement.

Pursuant to the Undertaking Agreement, the Lees arranged to sell the Closter House to a third party, the Ans. During a closing attempt on October 23, 2003, the Ans rejected the New York Deed based on insufficient warranties. Subsequently, the Lees' closing attorney, Jordan D. Yuelyes, tried to salvage the sale to the Ans by preparing a new deed (the "NJ Deed") and affidavit of title in compliance with New Jersey standards (collectively, the "revised title documents"). However, the Chois refused to execute the revised title documents.

### B. The 2003 Federal RICO Case: *Lee v. Choi*

Shortly after the failed closing attempt with the Ans, the Lees sued the Chois in the Southern District of New York ("SDNY") under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), alleging that the Chois fraudulently induced their investment in phony business ventures in the period leading up to 2003. In addition to damages, the Lees sought a preliminary injunction or declaratory relief directing the Chois to execute the revised title documents so that the sale to the Ans could be completed. After hearing the parties on the matter, the court denied the preliminary injunction (*Lee v. Choi*, et al., 03 Civ. 8613 (SAS) (S.D.N.Y. November 26, 2003)). On appeal, the Second Circuit summarily affirmed the denial

of a preliminary injunction, finding no irreparable harm. *Sung Chul Lee v. Choi*, 140 F. App'x 299, 300 (2d Cir. 2005). The Lees did not further pursue their RICO claim.

        C.        **The 2009 New Jersey Malpractice Case:** *Lee v. Rah*

On October 30, 2009, the Lees sued Rah, their former attorney who had prepared the NY Deed, in the New Jersey Superior Court, Law Division, for breach of the legal services agreement, breach of fiduciary duty, and fraud, seeking damages arising from the failed real estate transactions. *Lee v. Rah*, BER-L-9556-09 (N.J. Super. Ct. Law Div. Oct. 30, 2009). The Lees alleged that Rah "knowingly misstated his ability and authority to provide legal services for New Jersey matters," and alleged that Rah's mistakes caused the Lees to lose "the benefit of the Deed," property rights in the Closter House, and the motion for injunctive relief or declaratory relief in the RICO action (Complaint, at 3-4).[2] Specifically, the Lees alleged that Rah was not licensed in New Jersey, was unfamiliar with New Jersey deed practices, used an improper form of deed, and prepared an invalid power of attorney in relation to the real estate transaction.

Rah sought dismissal of the suit based on lack of personal jurisdiction. The New Jersey trial court dismissed the case on that basis, and the Lees appealed. The New Jersey Superior Court Appellate Division reversed the dismissal "because of the foreseeable effects of Rah's conduct upon New Jersey" (*Lee v. Rah*, A-5295-09T3, at 9 (N.J. Super. Ct. App. Div. July 19, 2011)). Further appeals to the Supreme Court of New Jersey were unavailing. Rah reports that as of February 5, 2014, no further action had occurred in the New Jersey suit (Dkt. No. 13).

        D.        **The Present Action:** *Rah v. Lee*

On October 25, 2012, shortly after the New Jersey Supreme Court declined to review the case against him, Rah filed this action in federal court seeking an injunction against the New

---

[2] The quoted language appears on the third and fourth pages of the *Lee v. Rah* complaint, which are mistakenly both labeled "3" under that document's own pagination.

Jersey proceedings, declaratory relief, and damages covering the costs and fees incurred in that litigation. Defendants have not appeared in this case and Rah seeks default judgment.

## II.     Discussion

### A.     Standard of Review for Default Judgment

In considering a motion for default judgment, courts must independently evaluate whether the complaint establishes grounds for relief as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir. 1984) ("[T]he court [may] require [P]laintiff to produce evidence in support of the claims before entering [a default] judgment."), *cert. denied,* 469 U.S. 874 (1984). "Due to the unique circumstances that they present, default judgments overcome the presumption that the parties are responsible for raising their own defenses." *De Santis v. City of New York*, 10 Civ. 3508 (JPO), 2014 WL 228659 (S.D.N.Y. Jan. 22, 2014) (internal quotations omitted). Furthermore, "default judgments are disfavored" because they do not allow "for cases to be adjudicated on the merits." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001). The Court reviews Rah's claims for injunctive relief, declaratory relief, and fee-based damages applying the scrutiny that is appropriate for default judgment claims.[3]

### B.     Injunctive Relief Under the Anti-Injunction Act

Under the Anti-Injunction Act, in the absence of an express Act of Congress, federal courts may not "stay proceedings in a State court except . . . where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Rah argues that a stay

---

[3] Further regarding the level of scrutiny that is appropriate in this case, courts generally extend special solicitude to pro se litigants. However, as an attorney, Rah is deemed to be "experienced in litigation and familiar with the procedural setting presented" and therefore "receives no such solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

4

is needed here in aid of the federal court's jurisdiction and to protect the judgment from the 2003 RICO case by preventing relitigation.

### 1.     The "Necessary in Aid of Jurisdiction" Exception

An injunction is necessary in aid of jurisdiction "where the effect of a state court proceeding would be to defeat or impair the jurisdiction of the federal court." *Wyly v. Weiss*, 697 F.3d 131, 137 (2d Cir. 2012) (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922) (alterations adopted).  The "in aid of jurisdiction" exception clearly does not apply here because jurisdiction over the attorney malpractice claims first attached in the state court.

> It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. . . . The converse of the rule is equally true that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction . . . to defeat or impair the state court's jurisdiction.

*Kline*, 260 U.S. at 229.  Jurisdiction over the malpractice case first attached in New Jersey, not in federal court, because no federal court was exercising jurisdiction over a related matter at the time when the state suit was filed, and thus, there was no federal jurisdiction to be defeated or impaired.

### 2.     The Relitigation Exception

Under the relitigation exception, a federal court may enjoin a state court action "to protect or effectuate its judgments."  "The relitigation exception, which was designed to implement well-recognized concepts' of claim and issue preclusion, authorizes a federal court to enjoin state litigation of a claim or issue that previously was presented to and decided by the federal court." *Wyly*, 697 F.3d at 139 (internal quotations and citations omitted).  Rah contends that a stay is needed here to protect the judgment from the 2003 denial of preliminary injunction in the RICO case.

5

Because deciding the preclusive effect of a judgment "is usually the bailiwick of the *second* court" and "a court does not usually get to dictate to other courts the preclusion consequences of its own judgment," this exception is "strict and narrow" with "every benefit of the doubt go[ing] toward the state court." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2371-76 (2011). Furthermore, "the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately th[e Supreme] Court." *Atl. Coast Line R. Co. v. Bd. of Locomotive Engineers*, 398 U.S. 281, 287 (1970).

> As the Supreme Court has construed the relitigation exception:
>
> an essential prerequisite . . . is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. . . . [T]his prerequisite is strict and narrow[, and is based upon] what the earlier federal order *actually* said . . . [not] what the order was *intended* to say.

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988) (discussing *Atl. Coast Line*, 398 U.S. 281). Reviewing courts look to whether a particular point was actually argued before the prior court and whether the language in the prior court's order "necessarily implies any decision" on the issue with respect to which an injunction is later sought. *Atl. Coast Line*, 398 U.S. at 290.

To determine whether the relitigation exception applies here, the Court must first review Judge Shira A. Scheindlin's decision in *Lee v. Choi*, the 2003 federal RICO case. The Lees had sought a preliminary injunction forcing the Chois to sign the New Jersey deed to the Closter house. Judge Scheindlin denied the Lees' motion because they had not demonstrated irreparable harm or a substantial likelihood of success on the merits. First, she found no irreparable harm because the Lees' interest in the Closter House was monetary and therefore could be remedied through damages. Second, Judge Scheindlin found no substantial likelihood of success on the

6

merits because Ok Choi had signed her name to the Undertaking Agreement without understanding its contents and had signed her husband's name without a power of attorney. None of these findings precludes state regulation of attorney malpractice, "an essential prerequisite for [rendering an] injunction . . . necessary 'to protect or effectuate'" a prior order. *Id.* at 290.

The New Jersey action addresses claims that were not "previously . . . presented to and decided by the federal court" and therefore falls outside the scope of the relitigation exception. *Wyly*, 697 F.3d at 139. The Lees' breach of contract, breach of fiduciary duty, and fraud claims focus on the attorney-client relationship and the State of New Jersey's interest in regulating attorney conduct that touches upon activities in that state.[4] These state law issues were not argued or decided in the prior federal action. In *Atlantic Coast Line*, the Supreme Court held that even after a federal court denied an anti-strike injunction, a state court could grant and enforce an anti-strike injunction on state-law grounds because the federal court did not explicitly hold that the state court was preempted from doing so. 398 U.S. at 289-290. Here, Judge Schiendlin's denial of the Lees' preliminary injunction against the Chois, their counterparties, neither addressed nor precluded the Lees' related but separate state-law claims against Rah, their former attorney. *Cf. Id.* at 289 ("At no point during the entire argument did either side refer to state law, the effects of that law on [the state cause of action], or the possible preclusion of state remedies

---

[4] In other contexts, federal courts have recognized that the regulation of attorney practice is an important state function. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982) (extending *Younger* abstention and declining to enjoin a state court attorney discipline action because "[s]tates traditionally have exercised extensive control over the professional conduct of attorneys. The ultimate objective of such control is the protection of the public, the purification of the bar and the prevention of a re-occurrence.") (internal quotations and citations omitted).

. . . ."). Therefore, the relitigation exception does not apply and this Court may not enjoin the New Jersey proceedings against Rah.

### C. Declaratory Relief and Damages

Rah has also requested that this Court issue declaratory relief recognizing holdings that Rah believes are implicitly within Judge Scheindlin's prior order. For the same reasons that this Court may not enjoin the New Jersey action, it also may not issue declaratory relief that broadens the scope of a prior federal order and impairs the jurisdiction of New Jersey courts regarding a matter that is presently pending before them. *Samuels v. Mackell*, 401 U.S. 66, 72 (1971) ("The propriety of declaratory and injunctive relief should be judged by essentially the same standards."). Where no Anti-Injunction Act exception applies, it is the responsibility of the state court, and not a federal court, to determine what preclusive effect, if any, a prior federal order has. Contrary to Rah's unsupported allegation that "New Jersey is . . . one of the jurisdictions where the Full Faith and Credit Clause of the U.S. Constitution shall not be afforded to the judgments of the federal courts of the United States sitting in the sister states," "state courts . . . are presumed competent to resolve federal issues," including issues of preclusion. Rah Affirmation (Dkt. No. 10, at 4); *Exxon Corp.*, 486 U.S. 140, 150 (1988).

Additionally, Plaintiff has failed to identify any claims that support his request for damages. The state court is the appropriate body to decide fee-shifting issues in the case before it. This court will not infringe upon the state court's jurisdiction, and burden the Lees in their state-court action by granting a collateral fee-shifting request. *See Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9 (1940) (treating "restraint of the parties" like restraint of the state court). In *M'Culloch v. Maryland*, the Supreme Court famously observed that "the power to tax involves the power to destroy." 17 U.S. 316, 431 (1819). Similarly, the power to

8

impose or shift fees involves the power to deter or destroy the burdened litigation; the application of such power is inappropriate under these circumstances.

Accordingly, all of Plaintiff's requests for relief are impermissible under the Anti-Injunction Act.

### D. Subject Matter Jurisdiction

Having determined that the Anti-Injunction Act bars relief in this case, and finding no other basis for federal question jurisdiction, the Court dismisses this case for a lack of subject matter jurisdiction. Although federal courts retain inherent authority to enforce their prior judgments, Rah has not identified any judgment in need of enforcement or protection. "If an action is barred by the Anti-Injunction Act the District Court lacks subject matter jurisdiction and the complaint must be dismissed." *Johnson v. United States*, 680 F. Supp. 508, 512 (E.D.N.Y. 1987) (citing *Enochs v. Williams Packing & Nav. Co.,* 370 U.S. 1, 7 (1962)); *see also Bess v. Spitzer*, 459 F. Supp. 2d 191, 206 (E.D.N.Y. 2006) (dismissing plaintiff's claims against defaulting defendants sua sponte after finding the claims barred by the Anti-Injunction Act and other doctrines).

### III. Conclusion

For the foregoing reasons, the Motion for Default Judgment (Dkt. No. 10) is denied and the case is dismissed for lack of subject matter jurisdiction.

The Clerk of the Court is directed to terminate the motion at docket number 10 and close this case.

SO ORDERED.

Dated: New York, New York
       March 20, 2014

_____
J. PAUL OETKEN
United States District Judge